**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JULIO CESAR GUTIERREZ-JARAMILLO,
a/k/a "FLACO,"**

       **Petitioner,**

**v.**                                      **Civil Action No. 5:16cv172
(Judge Stamp)**

**FCI GILMER WARDEN,**

       **Respondent.**

## REPORT AND RECOMMENDATION

### I. Background

On November 17, 2016, the *pro se* Petitioner, an inmate at FCI Gilmer in Glenville, West Virginia, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 seeking prior custody credit for time spent in a Peruvian prison, pending extradition to the United States. ECF No. 1. Petitioner paid the filing fee at the time he filed his petition. ECF No. 2.

On November 21, 2016, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, a Show Cause Order was issued to the Respondent. ECF No. 4. On December 14, 2016, Respondent moved for an extension of time; the extension was granted by Order entered December 20, 2016. ECF Nos. 7 & 8. On January 3, 2017, Respondent filed a Motion to Dismiss or for Summary Judgment and Respond to Order to Show Cause with a memorandum in support. ECF Nos. 10 & 11. Respondent also filed a Motion to Seal Unredacted Documents with attachments. ECF No. 12. By Order entered January 12, 2017, the motion to seal was granted. ECF No. 13. Further, because Petitioner was proceeding *pro se,* a Roseboro Notice issued. ECF No. 14. On January 20, 2017, Petitioner filed a Reply to Respondent's Memorandum in Support of Motion to

Dismiss or for Summary Judgment and Response to Show Cause.  ECF No. 15. On February 3, 2017, Petitioner filed a Notice of Compliance with Roseboro Notice.  ECF No. 17.

This case is before the undersigned for review, report and recommendation pursuant to LR PL 2.

## II. Facts

A careful review of the underlying record reveals that Petitioner alleges that he is a native and citizen of the Republic of Colombia who, at the time he was extradited to the United States for prosecution on the criminal charges for which he is now sentenced, was residing in Peru.

A review of the docket in Petitioner's underlying criminal case in the United States District Court for the Southern District of Texas, available on PACER, reveals that on November 6, 1992, Petitioner  was indicted on two counts: Count One: conspiracy to import cocaine (offense date 6/25/90 – 11/6/92), in violation of 21 U.S.C. §§ 952(a), 960, and 963, and Count Five with aiding and abetting in the importation of cocaine (offense date 5/6/91), in violation of 21 U.S.C. §§  952(a), 960, and 18 U.S.C. § 2.  See S.D. Tex. Case No. 4:92cr270-3, ECF No. 1.

On December 2, 1992, a superseding indictment was entered, charging Petitioner in Count One with conspiracy to import cocaine (offense date 6/25/90 – 11/6/92), in violation of 21 U.S.C. §§ 952(a) and 960, and in Count Five with aiding and abetting to import cocaine (offense date 5/6/91), in violation of 21 U.S.C. §§ 952(a), 960, and 18 U.S.C. § 2.  See S.D. Tex. Case No. 4:92cr270-3, ECF No. 32. A warrant was issued for Plaintiff the same day.

On February 24, 1993, a federal grand jury in Houston Texas returned a second superseding indictment, charging Gutierrez-Jaramillo and ten codefendants with conspiracy to import into the United States from the Republics of Guatemala and Columbia in excess of five kilograms of cocaine between June 25, 1990 and the date of the indictment. Petitioner was again

charged Petitioner in Count One with conspiracy to import cocaine (offense date 6/25/90 – date of the indictment), in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(B), and in Count  Five with aiding and abetting in the importation of cocaine (offense date 5/6/91), in violation of 21 U.S.C. §§  952(a), 960, and 18 U.S.C. § 2.  See S.D. Tex. Case No. 4:92cr270-3, ECF No. 86.

On March 4, 1993, the bench warrant for Petitioner was returned unexecuted. See S.D. Tex. Case No. 4:92cr270-3, ECF No. 106.

On December 20, 1995, in Lima, Peru, Petitioner was detained and placed in the custody of Lurigancho Prison, charged with Illegal Drug Trafficking. See Declaration of Jan Hanks, Management Analyst, Bureau of Prisons ("BOP") Designation and Sentence Computation Center ("Jan Hanks Decl."), ECF No. 11-1, ¶ 7 at 3; see also Dec. 5, 2016 letter from Christian P. Benevides Ampuero, Deputy Director, Peru Ministry of Justice, National Penitentiary Institute, Department of Penitentiary Records, to Attorney Angela O. Arevalo Vasquez ("Dec. 5, 2016 letter, Peru Ministry of Justice"), ECF No. 11-1 at 8; and Response of Marisol Huashuasconco Del Castillo, Admin. of Identification and Records and Attorney Christian P. Benevides Ampuero, Deputy Director, Department of Penitentiary Records, to Request from Embassy of United States ("Response to United States Embassy Request"), ECF No. 11-1 at 9.

On January 27, 1998, in Peru, Petitioner was sentenced to an 8-year term of imprisonment for Crimes Against Narcotic Laws and Illegal Drug Trafficking Against the State. This 8-year term was computed from December 1, 1995 and was set to end November 30, 2003. See Jan Hanks Decl., ¶ 8 at 3; see also Dec. 5, 2016 letter, Peru Ministry of Justice, ECF No. 11-1 at 8; and Response to United States Embassy Request, ECF No. 11-1 at 9.

On October 15, 1998, a notation is made in the summary of Petitioner's Peruvian "intakes and releases" for the Lima Judicial District, contained in the Response to United States Embassy

Request, of a "defect found in sentence dated (27/Jan/98)." That term of imprisonment was modified from an 8-year to a 15-year term of imprisonment, and computed from December 2, 1995, not December 1, 1995, and set to end on December 1, 2010.  See Jan Hanks Decl., ¶ 9 at 3; see also Dec. 5, 2016 letter, Peru Ministry of Justice, ECF No. 11-1 at 8; and Response to United States Embassy Request, ECF No. 11-1 at 9.

On October 4, 2002, the "Higher Court" in Peru ordered a partial release; an extradition request by the United States government was approved the same day and filed as a detainer.  See Jan Hanks Decl., ¶ 10 at 3; see also Response to United States Embassy Request, ECF No. 11-1 at 9.

On October 11, 2002, the court in Peru issued a notice "that preventive detention for purpose of extradition is in effect with regard to Julio Cesar Gutierrez-Jaramillo, since by R.S. No. 239-96- JUS the extradition . . . has been granted; surrender must be postponed until the conclusion of the criminal proceedings pending in the Superior Court of Justice specialized in Illegal Drug Trafficking or termination of sentence, as applicable." See Jan Hanks Decl., ¶ 11 at 3; see also Response to United States Embassy Request, ECF No. 11-1 at 10.

On December 19, 2002, a note was entered into Gutierrez-Jaramillo's Peruvian records of "intakes and releases" for the Lima Judicial District regarding "[r]eversal of automatic appeal dated 02/Oct of this year, which found admissible the benefit of partial release requested . . . . Modified to find this benefit inadmissible.   Recommendation is due fulfillment of court–ordered duties." See Jan Hanks Decl., ¶ 12 at 3; see also Response to United States Embassy Request, ECF No. 11-1 at 10 - 11.

On December 22, 2009, the Peruvian court ordered a partial release for Petitioner. Due to the extradition request by the United States, a detainer was lodged and Petitioner was placed into

INTERPOL's custody.   <u>See</u> Jan Hanks Decl., ¶ 12 at 3; <u>see also</u> Response to United States Embassy Request, ECF No. 11-1 at 11.

On December 23, 2009, Petitioner was extradited from Peru to the United States.  <u>See</u> Jan Hanks Decl., ¶ 14 at 3; <u>see also</u> Dec. 5, 2016 letter, Peru Ministry of Justice"), ECF No. 11-1 at 8; Dec. 8, 2016 letter from Vaughn A. Ary, Director, Office of International Affairs to Deborah H. Colston, BOP Management Analyst, RE: Status of Foreign Jail Credit Request in the matter of Julio Cesar Gutierrez Jaramillo ("Dec. 8, 2016 Response Letter") [ECF No. 11-1 at 6]; Response to United States Embassy Request"), ECF No. 11-1 at 11; and USM 129 Data, ECF No. 11-1 at 18.

Petitioner made his initial appearance in Case No. 4:92cr270-3 in the United States District Court for the Southern District of Texas on December 24, 2009.  <u>See</u> S.D. Tex. Case No. 4:92cr270-3, ECF No. 405.

On April 9, 2010, Petitioner entered guilty pleas without a written plea agreement to both counts in the second superseding indictment.  <u>See</u> S.D. Tex. Case No. 4:92cr270-3, ECF No. 424.

On February 18, 2011, Petitioner was sentenced in the United States District Court for the Southern District of Texas to a 210 month term of imprisonment for Conspiracy to Import more than 5 kilograms of Cocaine and Importation of more than 5 kilograms of Cocaine, Aiding and Abetting. <u>See</u> Judgment in a Criminal Case, ECF No. 11-1 at 21 - 22.  The Court noted that Petitioner's total offense level was 40 with a criminal history category of I, giving him an advisory guidelines custody term of 292 to 365 months and a fine range of $25,000 to $8 million. <u>See</u> Transcript of Sentencing Hearing, S.D. Tex. Case No. 4:92cr270-3, ECF No. 484 at 18. Trial counsel argued for downward departure, based on the length of time Petitioner had been

held in Peruvian custody pending extradition, asserting that Petitioner's initial Peruvian sentence

was only 28 months, but

> [w]hen the United States expressed an interest in having him extradited -- and we have an order of extradition signed in 1995 for Mr. Jaramillo -- every time that he went up for parole, the extradition and his charges awaiting in the United States was in the background of the way the Peruvian authorities dealt with him. And, for example, when he was ready to be released upon the completion of 28 months, the prosecutor had to sign off on this status of parole to parole him; and the prosecutor, having received the letters of consideration from the United States, reversed themselves [sic], appealed the sentence, and had him retried; and the new sentence now was 15 years.
>
> And he was eligible for parole after eight years on the 15-year sentence, and he was eligible for parole the year 2000. In 2000 he was about to be released. The United States again sent a communique from the embassy to the Peruvian authorities explaining that they wanted him extradited and to hold him for US marshals to pick him up upon the completion of the sentence.
>
> And what you ended up seeing on repeated occasions was an interpretation by the Peruvian authorities not to release him. The stated intent of the letter that I've submitted to the Court of 2002 from the American Embassy in Lima to the Peruvian authorities is to hold him for the completion of sentence.
>
> But unfortunately, that translated into hold him until we pick him up. And his eligibility to be paroled at that time, much in a very similar way the way you have sometimes situations where in the state system -- or no longer in the federal system you have parole or probation but in the same way as someone can -- is eligible for a halfway house or probation but they have an outstanding issue and they won't be paroled to the street. The same thing happened to him in Peru.
>
> And the decisions from the Peruvian government constantly cite the fact that he has this pending extradition from the United States. So every time he was up for parole, he wouldn't be released. So, essentially, from my digging through all the history of this, he served an additional almost nine years and something months on the sentence because he had to do the -- he had to do almost a full 15 years instead of being allowed on early parole.
>
> The incident itself that he was accused of in Peru under international standards was so -- had been such low level of narcotics involvement that I don't think it would have been a conviction anywhere in the world. He was accused of participating in the distribution because he had three times visited a home of someone that was accused of narcotics trafficking. That was, essentially, what it was.
>
> . . .

6

The United States sought to extradite him, but I think the Peruvian authorities just went -- bent over backwards to make sure he wasn't released until he did all his time. And even though the United States didn't request that, it's -- I think it was a matter of politics and very much the way a smaller, poorer country will try to do everything that a more potent super-power is asking; and we have a situation where any other prisoner would have been released years before; but he had to endure that.

Id. at 19 - 23. Counsel asked the Court to "consider that the very process to bring him here prevented him from getting out earlier as he normally would have through no design or intent but just through operation of law." Id. at 23. Petitioner then gave a lengthy statement in allocution, explaining the complicated vagaries of the Peruvian prison system, and then the Government provided this statement:

MR. STABE: First off, I can't really address the facts of what happened in Peru because I'm not really aware of them. I don't necessarily dispute them; and as the defense pointed out, even the state -- the Texas State Prison System, you know, inmates are denied parole when there's a hold on them from another jurisdiction; and it does affect their parole.

So . . . what they've told you happened in Peru may very well have happened in Peru. But regardless of that, he was not held in Peru on our charges but it may have delayed his being released on our charges. So I know the Bureau of Prisons - - as I understand it from talking to attorneys with the BOP, he will not get credit for any of the time that he served in Peru by the Bureau of Prisons.

I can confirm for the Court that Mr. Gutierrez did try to cooperate. He came forward fairly soon after his return to the United States, to Houston. We would meet with him a couple of times. He was cooperative. I think he genuinely was trying to cooperate and give us information, but it was either just stale information or just information we just could not act on.

So it did not amount to substantial assistance. I mean, I'm going to ask the Court to sentence at the bottom of the guideline; but I know 3553(a), I think the Court does have the discretion to take into account the prison sentence in Peru, the Defendant's age, his health, and the fact that he did cooperate in fashioning what you believe to be a reasonable sentence.

Id. at 31 – 32.

After considering the parties' submission, the downward departure arguments of counsel, and the Government's acknowledgement that it could not contest that its extradition request might have delayed the completion of Petitioner's Peruvian sentence, but admitting that although it did "not know that to be a fact; and there's no independent supporting evidence to that effect [id. at 33], the Court determined that a downward departure was indicated based on the totality of the circumstances that "take this [case] out of the heartland of the guidelines." Id. The Court determined that on balance, based on "the unusual circumstances here[,] . . . [it would] make a downward departure from Offense Level 40 to Offense Level 37, Criminal History Category I," and impose a sentence within that range. Id. at 34 – 35.  Accordingly, the Court imposed the 210-month sentence, 82 months below the bottom of the applicable guideline range. Id. at 35.

In its Statement of Reasons, the sentencing judge noted he considered and factored in the time Petitioner spent in Peruvian custody pending extradition to the United States before imposing a sentence below the  292 - 365 months advisory sentencing guideline range. See Statement of Reasons, ECF No. 12-1 at 2 - 3.  Specifically, the Court commented that it considered defense counsel's arguments for downward departure regarding Petitioner's status and the sentence he served in Peru based on crimes "not really defined other than that they were drug-trafficking crimes[,]" and acknowledged that the Government had not contested the fact that the extradition may have delayed Petitioner's release from imprisonment in Peru. Id. at 3. The Court also noted that "in the event it is determined that a downward departure is not appropriate under these grounds, the Court would impose a variance sentence under the same terms." Id.

The Bureau prepared a sentence computation for Petitioner based on the 210-month term of imprisonment, commencing the sentence on February 18, 2011, the date it was imposed. See

SENTRY Sentence Monitoring Computation Data, ECF No. 11-1 at 30. Petitioner also received prior custody credit from December 23, 2009, the date he was received into exclusive federal custody, through February 17, 2011, the date before the federal sentence was imposed.   See id. at 31.   Therefore, Petitioner's projected release date, with consideration for good conduct time, is June 11, 2025.   Id.

**Dirct Appeal**

On appeal, Petitioner argued that

1) the district court failed to give him credit for the 16 years he spent in prison in Peru, or alternatively, credit for the more than seven years he was held in prison in Peru after his parole in 2002, because the United State delayed his extradition.

2) Next, Petitioner challenged the application of his two-level sentence enhancement under § 2D1.1(b)(2)(A), for when, *inter alia,* "an aircraft other than a regularly scheduled commercial air carrier was used to import or export [a] controlled substance."

3) Petitioner also challenged the three-level enhancement for his status as a manager or supervisor under § 3B1.1(b), asserting that his role was limited to transportation of the drugs in the United States, and he had no decision-making authority or control.

4) Trial counsel was ineffective for failing to obtain and present documentation that would have supported his claim for credit for the time spent in prison in Peru.

On April 24, 2012, the Fifth Circuit Court of Appeals entered an unpublished *per curiam* opinion affirming the District Court.   See United States v. Gutierrez-Jaramillo, 467 Fed. Appx. 301, 2012 U.S. App. LEXIS 8212, 2012 WL 1399985 (5th Cir. Tex. Apr. 24, 2012). Specifically, the Fifth Circuit noted that the district court had already granted a downward departure of 82 months below the 292 to 365 months guideline range, "based in part, on Gutierriez's arguments regarding his Peruvian sentence" before finding that Petitioner was not entitled to prior custody credit for time served in Peruvian custody and that there was no abuse of discretion in the amount of the departure allowed by the District Court at sentencing.   See id. at * 3.   Petitioner did not petition the United States Supreme Court for a writ of *certiorari*.

**Motion to Vacate Under 28 U.S.C. § 2255**

Petitioner's April 4, 2013 motion to vacate attached numerous documents, many of which were in Spanish, and raised one claim of ineffective assistance of counsel at sentencing, arguing that he "was not credited for time spent in Peruvian prisons because counsel did not submit requisite proofs." See S.D. Tex. Case No. 4:92cr270-3, ECF No. 503 at 3.

On October 3, 2013, the Magistrate Judge recommended that Petitioner's § 2255 motion be denied and dismissed without prejudice, noting that the documents Petitioner attached to his § 2255 motion, because they were in Spanish and not translated into English, were not admissible. However, he noted that the documents that had been translated into English would not have added anything to the sentencing proceeding because they addressed issues that were uncontested. Further, even if the documents contained *some* additional information relevant to the sentencing proceeding, the record showed that Petitioner had already received a downward departure commensurate with the additional time he claimed to have been unfairly incarcerated in Peru:

> [t]he documents Gutierrez-Jaramillo . . . submitted show that he was originally sentenced to eight years incarceration, that his sentence was altered and increased to fifteen years incarceration, and that he was inexplicably rejected for parole in 2002. This, Gutierrez-Jaramillo asserts, led him to serve, beyond his original eight year sentence, an additional seven years and three months in a Peruvian prison. . . . With the downward departure from a [sic] adjusted offense level of 40 to 37, however, that additional time in Peruvian prison was taken into account. With an adjusted offense level of 40, Gutierrez-Jaramillo faced a guideline sentencing range of 292-365 months. With the downward departure of three levels to an adjusted offense level of 37, Gutierrez-Jaramillo faced a sentencing range of 210-262 months. **That 82 month difference in the sentencing range following the downward departure is nearly the same amount of time Gutierrez-Jaramillo claims to have been to [sic] kept in Peruvian prison despite being eligible for release on parole**. Accordingly, there is no reasonable likelihood that the District Court would have departed further based on any information contained in the documents Gutierrez-Jaramillo now submits. Gutierrez-Jaramillo was not prejudiced, within the meaning of Strickland, by the absence of the documents he has submitted with his § 2255 motion.

ECF No. 503 at 11 – 12 (emphasis added).  By Order entered November 1, 2013, the Report and Recommendation was adopted; the § 2255 motion was dismissed with prejudice and a certificate of appealability was denied.  See S.D. Tex. Case No. 4:92cr270-3, ECF No. 505.  Nonetheless, Petitioner filed a notice of appeal, but it was dismissed on January 3, 2014 for failure to prosecute.  S.D. Tex. Case No. 4:92cr270-3, ECF No. 510.

**Other Post-Conviction Motions**

On November 24, 2014, in the sentencing court, Petitioner filed a Motion for Retroactive Application of Sentencing Guidelines Pursuant to 18 U.S.C. § 3582, and another Motion for Retroactive Application of Sentencing Guidelines Pursuant to 18 U.S.C. § 3582 the next day. S.D. Tex. Case No. 4:92cr270-3, ECF Nos. 517 & 518.  On December 16, 2014, he filed an Amended Motion for Retroactive Application of Sentencing Guidelines Pursuant to 18 U.S.C. § 3582, along with a supplement. See S.D. Tex. Case No. 4:92cr270-3, ECF Nos. 520 & 521. The Government has filed a response in opposition; a decision on that motion is still pending.

On September 21, 2015, one year, one month and twenty-seven days before filing the instant § 2241 petition, Petitioner filed a previous § 2241 petition in the United States District Court for the Middle District of Pennsylvania, seeking relief from his "unlawful detention," alleging that he custody in violation of an extradition treaty between the United States and the Republic of Columbia, because the criminal acts for which he was indicted and occurred prior to December 17, 1997 – the date when the treaty was promulgated.  In that petition, Gutierrez-Jaramillo again alleges that because he was held for extradition, he served 87 months "which have not been credited to any sentence." M.D. Pa. Case No. 3:15cv1832, ECF No. 1. However, he does not claim that he is entitled to prior custody credit for that period of time, and does not

request such credit in his prayer for relief.  The Respondent has answered; Petitioner has filed a traverse; and a decision on that petition is still pending.

On January 11, 2016, in the sentencing court, Petitioner filed a Motion to Correct Clerical Error, contending that in his PSR, the Probation Officer determined that his Offense Level was 40 and his Criminal History Category I, but at sentencing, the Court determined that his Offense Level was 37, Criminal History Category I, and the Probation Officer never corrected or appended the PSR to reflect the oral pronouncement at sentencing, which has affected his substantial rights.  S.D. Tex. Case No. 4:92cr270-3, ECF No. 530 at 2 - 3. Specifically, Petitioner cited the Government's use of the Offense Level of 40 in its response to his Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582. Id. at 3. A decision on that motion is still pending.

On May 15, 2017, in the sentencing court, Petitioner filed a Motion For Sentence Relief Under the Federal Prison Bureau Non-Violent Offender Relief Act of 2003. S.D. Tex. Case No. 4:92cr270-3, ECF No. 536.   That motion is still pending.

### III. Contentions of the Parties

**A.  The Petition**

Gutierrez-Jaramillo's petition raises a single claim: that the BOP unlawfully computed his sentence when it denied him prior custody credit for 87 months of time between October 2, 2002 [sic] and December 23, 2009, during which he was held in a Peruvian prison solely at the request of the United States.  ECF No. 1 at 5 – 6. He asserts that this time has not been credited against any other sentence, and pursuant to 18 U.S.C. § 3585(b) and BOP Program Statement 5880.30, he is entitled to credit against his federal sentence for it. Id. at 6.

Petitioner asserts that he has exhausted his administrative remedies. He contends his administrative remedy was denied by the Warden on January 21, 2016; its appeal was partially granted, but that the Central Office neither granted nor denied, pending additional information from the Office of International Affairs which "appears to be not forthcoming." Id. at 7 - 8.

As relief, Petitioner seeks 87 months credit for the time he awaited extradition from Peru at the behest of the United States. Id. at 9.

Petitioner avers that the reason his remedy by way of § 2255 is inadequate or ineffective to test the legality of his detention is that his petition has nothing to do with the sentence imposed by the District Court for the Southern District of Texas, only the execution of his sentence by the BOP. Id. at 10.

## B. **Respondent's Motion to Dismiss or for Summary Judgment**

The Respondent contends that the petition should be dismissed or summary judgment granted in its favor because

1) Petitioner's federal sentence commenced on February 18, 2011 [ECF No. 11 at 4]; and

2) Petitioner is not entitled to any additional prior custody credit against his sentence for the time period of October 2, 2002 through December 23, 2009, because all time spent in custody prior to the commencement of his federal sentence was credited against his Peruvian sentence. Id. at 5.

Respondent concedes that Petitioner has exhausted his administrative remedies. Id. at 2.

## C. **Petitioner's Response in Opposition**

In his response, the Petitioner reiterates his arguments and attempts to refute the Respondent's on the same. He argues that the Warden's calculation of the date his sentence commenced is flawed.  ECF No. 15 at 1.  He now argues that but for the October 4, 2002 [sic] detainer, he would have been released from Peruvian custody on October 4, 2002.  However, he was continuously held from that date until December 12, 2009 [sic]. Id. at 1 & 2.  He challenges

the Warden's contention that the below-guidelines federal sentence he received was a result of his Peruvian incarceration, noting that "the sentencing court is not authorized to order prior custody reductions.  That power only lies with the Attorney General, through the Bureau of Prisons."  Id. at 3. Accordingly, he concludes, he could not have received prior custody credit from the sentencing court.  Id.

## IV. <u>Standard of Review</u>

### A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than

labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Conley</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>Id.</u> (citations omitted), to one that is "plausible on its face," <u>Id.</u> at 570, rather than merely "conceivable." <u>Id.</u> Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir. 2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id.</u>

When, as here, a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. <u>Summary Judgment</u>**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. <u>Maynard v. Dixon</u>, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 1986.

A district court should construe *pro se* petitions liberally, no matter how unskillfully pleaded.  See Haines v. Kerner, 404 U.S. 519, 520 (1972). The Court is required to hold a *pro se* pleading to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980); Cruz v. Beto, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed.

16

2d 263 (1972). The principles requiring liberal construction of *pro se* pleadings, however, are not without limits. Gordon v. Leeke, 574 F.2d at 1151. Liberal construction does not require courts to construct arguments or theories for a *pro se* plaintiff, because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party. Id.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court.  Weller v. Dept. of Social Services, 901 F.2d 387 (4th Cir. 1990).

## V. Analysis

### A. Prior Custody Credit

Petitioner contends he is entitled to 87 months prior custody credit for the time he spent in custody in Peru, from October 2, 2002 [sic], the date the detainer was placed, through December 12, 2009 [sic], when he was finally extradited to the United States.

Respondent argues that Petitioner is not entitled to any additional prior custody credit dating back to October 4, 2002, because he was in the primary custody of Peru, serving his sentence there, until December 23, 2009, when he was extradited to the United States. His federal sentence did not commence until February 18, 2011, the day it was imposed. Further, all the time Petitioner spent in federal custody from December 23, 2009, the date he was received into federal custody, through February 17, 2011, the day before his federal sentence was imposed, has already been credited toward his federal sentence.  ECF No. 11 at 4 – 7.

In reply, Petitioner now argues that he is entitled to prior custody credit from October 4, 2002, the date the detainer was placed, through December 12, 2009 [sic], when he was finally extradited to the United States. ECF No. 15.  He specifically denies the Warden's contention that the sentencing court gave him any relief based on the time he served in Peru, arguing that only

the Attorney General, through the BOP, is authorized to order prior custody sentence reductions. ECF No. 15 at 3.

> Eighteen U.S.C. § 3585(b), states:

> [D]efendant shall be given credit toward the service of a term of imprisonment for any time he spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

Petitioner maintains that under that statutory provision, he is entitled to credit against his federal sentence from October 4, 2002, when a federal detainer was lodged against him until December 23, 2009, when he was extradited to the United States to face his federal charges here. In advancing this argument, Petitioner maintains that this period of time was not applied to his Peruvian sentence and did not otherwise benefit him with respect to his federal sentence.

A careful review of the exhibits, including records from the Peruvian authorities, as well as a thorough review of the sentencing court records and the record of Petitioner's direct appeal to the Fifth Circuit, establishes that Petitioner is not entitled to any prior custody credit, and that his sentence, as calculated by the BOP, is correct.

Turning first to Petitioner's argument that a federal detainer was lodged against him on October 4, 2002, but he was not released to the United States authorities until December 23, 2009, thus entitling him to credit on his federal sentence for this time, he is mistaken in his reasoning. Where, as here, a prisoner faces both charges from another sovereignty, in addition to his federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction applies. Primary jurisdiction is explained in United States v. Smith:

> In the context of successive criminal prosecutions by different sovereignties this "chief rule which preserves our two systems of courts from actual conflict of jurisdiction" means that the sovereignty which first arrests the individual acquires the right to prior exclusive jurisdiction over him . . . and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty…

United States v. Smith, 812 F.Supp. 368, 371 (E.D.N.Y. 1993) (*quoting* In re Liberatore, 574 F.2d 78 (2nd Cir. 1978)).

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D. W.Va. September 27, 2010); Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998), *citing* United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence."). Here, despite the fact that the detainer was filed, Petitioner remained in the primary jurisdiction of the Peruvian authorities. As has been repeatedly explained to Petitioner, first by the sentencing court and then by the Fifth Circuit, that time was credited against the undischarged portion of the Peruvian sentence for which he was paroled.

Accordingly, because all of the time Petitioner spent detained from October 4, 2002 until he was extradited on December 23, 2009 was credited towards the remainder of his Peruvian sentence that he was serving when he was paroled there; that time cannot also be applied against his federal sentence as prior custody credit, because it would amount to double credit in violation of 18 U.S.C. § 3585(b). See United States v. Wilson, 503 U.S. 329, 337 (1992) (§3585(b) precludes double credit). Despite Petitioner's contentions to the contrary, the sentencing judge

did in fact have the discretion, pursuant to 18 USC §3553(a), to take into account the prison sentence Petitioner served in Peru, Petitioner's age, health, and the fact that he did cooperate, in determining the below-guideline sentence that gave Petitioner 82 months relief on the 87 months Petitioner argues here that he is entitled to receive. Although Peruvian authorities may have unfairly over-detained Petitioner, if indeed that was the case, it was not at the request of the United States, and it is apparent that the sentencing court did what it could, within the confines of its discretion under the 18 USC §3553(a) sentencing factors, to attempt to remedy that situation. Petitioner is not entitled to any prior custody credit and his computation has been correctly calculated.

## IV. <u>Recommendation</u>

Based on the foregoing, the undersigned recommends that the Respondent's Motion to Dismiss or in the Alternative, Motion for Summary Judgment [ECF No. 10] be **GRANTED** and Petitioner's §2241 petition [ECF No. 1]   be **DENIED and DISMISSED with prejudice**.

**Within fourteen (14) days** of being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation ("R&R") to the *pro se* Petitioner by certified mail, return receipt requested, to his last known

address as shown on the docket sheet. The Clerk of the Court is further directed to transmit a copy of this R&R electronically to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: June 19, 2017

/s/  James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE